**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISIION**

**CASE NO.:**_____

| | |
|---|---|
| MICHELLE MCDOW, ) | |
| ) | |
| *Plaintiff,* ) | |
| vs. ) | |
| ) | **COMPLAINT FOR DAMAGES** |
| DELTA AIR LINES, INC., and SOCIETE ) | |
| AIR FRANCE CORP., SOCIETE AIR ) | |
| FRANCE d/b/a AIR FRANCE, ) | **JURY TRIAL DEMANDED** |
| ) | |
| *Defendants.* ) | |

COMES NOW Plaintiff Michelle McDow, by and through the undersigned counsel and pursuant to the Federal Rules of Civil Procedure, files this Complaint for Damages against Defendants Delta Airlines Inc., and Societe Air France, doing business as Air France Inc., alleging as follows:

**PARTIES AND JURISDICTION**

1. Plaintiff Michelle McDow, hereinafter "Plaintiff", at all times referenced herein, is a physically disabled, natural person, domiciled in the State of Hawaii, who requested wheelchair assistance when traveling.

2. Defendant Delta Airlines Inc., hereinafter "Delta", is a corporation incorporated under the laws of Delaware and its principal place of business is in Atlanta, Georgia; located at 1030 Delta Blvd, Dept 982, Atlanta, GA, 30354, USA. Defendant Delta is authorized to do business in the State of Georgia and does conduct business Georgia, where it also "at home."

3. Defendant Societe Air France, d/b/a/ Air France and hereinafter "Air France", was a foreign business corporation, with a principal place of business at 1460 Broadway, 24th

Floor, New York, NY, 10018, USA. Defendant Air France is authorized to do business in the State of Georgia and has a registered agent located at 2 Sun Court, Suite 400, Peachtree Corners, GA, 30092, USA.

4. Defendants Delta and Air France are common carriers providing scheduled airline service to the public for a fee, and as common carriers they owe the highest duty of care to the Plaintiff who, at all times relevant herein, was a fare-paying passenger who traveled on the Defendants' airlines.

5. Jurisdiction over these claims as well as DELTA and AIR FRANCE exists pursuant to 28 U.S.C. § 1331 under a treaty of the United States of America, the Convention for the Unification of Certain Rules Relating to International Carriage by Air, signed at Warsaw on October 12, 1929 (known as the "Warsaw Convention") 49 stat., Part II, p.3000, 2 Bevans 983, 137 L.N.T.S. 11, as modified by the Convention for the Unification of Certain Rules for International Carriage by Air, opened for signature on 28 May, 1999 ICAO Doc. 9740 ("known as the "Montreal Convention"), and the 1995 IATA/Intercarrier Agreement which, among other things, eliminates any limitation on damages. Both the United States of America and France are signatories to the Warsaw and Montreal Treaties. DELTA and AIR FRANCE are signatories to the IATA agreement.

6. Furthermore, this court has jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00 exclusive of interests and costs.

## VENUE

7. Venue in this district satisfies the requirements of 28 U.S.C. § 1391 in that, as set out in this Complaint, Defendants, Delta Airlines Inc. and Societe Air France Corp., Societe Air

France d/b/a Air France, conduct substantial business in and are subject to personal jurisdiction in this district including substantial operations and flights at Hartsfield-Jackson Atlanta International Airport in Atlanta, Georgia in the Northern District of Georgia. Venue in this district satisfies the requirements of § 1391 and Defendants are subject to personal jurisdiction in this district and has sufficient contacts with this district for this court to exercise both jurisdiction and venue.

## GENERAL ALLEGATIONS

8.  On or about January 15, 2023, Plaintiff Michelle McDow was a ticketed passenger on a flight from Jomo Kenyatta International Airport (hereinafter NBO) to Los Angeles, California (hereinafter LAX) with a scheduled stop to change aircraft at Charles De Gaulle (hereinafter CDG) in Paris, France. Defendant Delta sold the ticket to Plaintiff and made representations to Plaintiff, both through its contract of carriage and its agents, that Defendant Delta, and its affiliate partner Air France, would provide wheelchair services to Plaintiff for her travel. Due to Plaintiff suffering from a severe liver condition as well as a musculoskeletal condition in her leg, she required and requested wheelchair service in advance of her travel.

9.  Plaintiff Michelle McDow arrived CDG in Paris, France, for her connecting flight on Air France / Delta Flight 8508 to LAX, holding a valid first-class ticket.

10. When purchasing her ticket, the Plaintiff requested disability accommodations in the form of a wheelchair. The ticket she received also included an annotation indicating that she required assistance.

11. Upon her arrival at CDG, the Plaintiff immediately encountered unexpected and humiliating difficulties related to her requested accommodations.

12. As she disembarked from her previous flight from NBO, porters instructed the Plaintiff to proceed through door 8, for Air France, in order to receive wheelchair assistance.

13. After proceeding through the door, Plaintiff encountered an Air France employee, who she asked to call for a wheelchair so that she could access the first-class lounge, a benefit that accompanied her validly purchased ticket.

14. Rather than assisting her, the Air France employee informed her that there was an area, across the airport, where she could walk to and obtain a wheelchair. When she informed him that it was too great of a distance for travel due to her disability, he snidely responded, "how did you walk up to the wheelchair assistance desk" and "how did you walk here from your hotel this morning."

15. Finding the treatment at the hands of this employee unbearable, Plaintiff asked for directions to the first-class lounge, with the hope that someone there would be able to assist her.

16. Instead of providing directions, the Air France employee informed her that, despite her valid first-class ticket, she was not allowed into the first-class lounge because she needed a wheelchair.

17. Despite the efforts from a female co-worker to intervene, the Air France employee continued to belittle and mock the Plaintiff, stating, "oh lucky you . . .first class . . . good for you" in reference to her first-class ticket.

18. At this point, seeing no end to the abuse she was enduring, Plaintiff asked for the employee's name. In response he zipped up the sweater he was wearing, hiding his identification, rudely telling her to take his picture.

19. After repeating that all she wanted was his name, the Air France employee threatened to call the police on her.

20. The co-worker who initially attempted to intervene was finally able to do so and walked the Plaintiff to a room where people were waiting for wheelchairs and where she could use the washroom.

21. Despite signs pointing towards the end of her nightmare, once in the room, the Plaintiff encountered a rude airport employee. Every attempt to ask the female employee in the room for a wheelchair was met with rude shooing gesticulations. She was also unable to obtain assistance to use the washroom.

22. Through her use of an interpreter, and after waiting an hour, the Plaintiff called Delta, hoping for help through this ordeal, but was yet again dismissed advising Plaintiff that they are only able to assist with booking and reservations.

23. Over the next hour, the Plaintiff begged multiple employees for wheelchair assistance, and in each instance, she was rebuffed.

24. The Plaintiff then encountered an Air France supervisor who empathized with her situation, informing her that she should have never been treated so poorly. He said he would try to help her find wheelchair assistance but, due to the several hours wasted by the other people she encountered, it would be difficult because boarding for upcoming flight closed in twenty minutes.

25. Ultimately, the Plaintiff did not see that supervisor again and no wheelchair came. She was forced, due to the brace around her torso protecting her liver and her leg brace, to hobble across the airport to her gate. After much pain, suffering, and humiliation, the Plaintiff boarded her flight at 1:06pm.

## FIRST CAUSE OF ACTION
### *NEGLIGENCE PER SE*

26. Plaintiff re-alleges and incorporates by reference as though fully set forth herein all other paragraphs of this Complaint.

27. The Department of Transportation (DOT) has promulgated rules, 14 C.F.R. § 382, among others governing airlines for the accommodation of disabled individuals pursuant to the Air Carrier Access Act (ACAA), 49 U.S.C. §§ 41702; 47105 and 41712.

28. Subpart 39 of the DOT regulations provides that carriers shall ensure that individuals with a disability are to be provided with assistance in enplaning, deplaning, and in making flight connections and transportation between gates. 14 C.F.R. § 382.39(a).

29. Defendants, and each of them, failed to comply with this requirement by repeatedly failing to provide wheelchair assistance.

30. Plaintiff suffered emotional injuries as a result of Defendants' failure to properly provide assistance in enplaning, deplaning, making flight connections and wheelchair assistance.

31. Plaintiff informed Defendants herein of her disability and was entitled to be protected by the provisions of 14 C.F.R. § 382 in that she is a disabled American.

32. Plaintiff requests compensation for past and future economic and non-economic damages she has suffered, as well as all other compensation the court and jury deem just and proper.

## SECOND CAUSE OF ACTION
### *NEGLIGENT MISREPRESENTATION*

33. Plaintiff re-alleges and incorporates by reference as though fully set forth herein all other paragraphs of this Complaint.

34. When Plaintiff purchased her airline ticket, Defendant Delta led her to believe that because she requested wheelchair assistance, Delta would have agents ready to assist her upon the arrival and departure of each flight, including on Defendant affiliate carrier Air France.

35. During the course of Plaintiff's travels, she was not met with a wheelchair or other assistance and was abandoned, endangered and forced to push past her physical limits to make her way around the airport.

36. Plaintiff relied on Defendants' promise of wheelchair assistance during her travels.

37. Defendants' misrepresentation caused Plaintiff great distress as well as intense emotional and physical pain.

38. Plaintiff requests compensation for the physical and emotional pain and suffering she has suffered and continues to endure. She also seeks reimbursement for the bills and expenses she has incurred, as well as all other compensation the court and jury deem just and proper.

### THIRD CAUSE OF ACTION
*BREACH OF DUTY OF A COMMON CARRIER TOWARD DISABLED OR INFIRM PASSENGERS*

39. Plaintiff re-alleges and incorporates by reference as though fully set forth herein, all other paragraphs of this Complaint.

40. When Defendants failed to provide the wheelchair assistance that the physically infirm Plaintiff previously requested, as noted on her ticketing, and failed to provide assistance in enplaning, deplaning and connecting, Defendants egregiously violated the duty of common carriers toward disabled passengers, a duty which binds them to provide as much additional care as is reasonably necessary to ensure the passenger's safety.

41. Defendants did not provide additional care that they had originally agreed to make available and were required to provide.

42. Though it was clearly indicated on Plaintiff's ticket, none of the Defendants' agents voluntarily provided a wheelchair or the additional care and assistance Plaintiff needed.

43. Defendants endangered Plaintiff's physical safety and emotional well-being.

44. Plaintiff requests compensation for the physical and emotional pain and suffering she has incurred, as well as all other compensation the court and jury deem just and proper.

## FOURTH CAUSE OF ACTION
### *NEGLIGENCE*

45. Plaintiff re-alleges and incorporates by reference as though fully set forth herein all other paragraphs of this Complaint.

46. Throughout Plaintiff's travels, Defendants were negligent in their failure to provide her with adequate assistance.

47. Defendants' treatment of Plaintiff fell below the standard of reasonable care and the highest duty of care owed to airline passengers.

48. The failure to provide wheelchair enplaning, deplaning and connection assistance caused great hardship and suffering to Plaintiff, forcing her to rely on her own fortitude after she was left to fend for herself at CDG.

49. Throughout her travel with Defendants, Defendants' agents did not take reasonable care to ensure Plaintiff was not harmed.

50. While Plaintiff already suffered from pre-existing liver and leg conditions before traveling with Defendants, her medical conditions were aggravated as a result of the treatment from the Defendants.

51. Plaintiff requests compensation for the physical and emotional pain and suffering she has endured and continues to endure. She also seeks reimbursement for bills and expenses she has incurred, as well as all other compensation the court and jury deem just and proper.

## FIFTH CAUSE OF ACTION
### *INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

52. Plaintiff re-alleges and incorporates by reference as though fully set forth herein all other paragraphs of this Complaint.

53. Defendants abandoned and humiliated her at the airport, causing Plaintiff great mental and emotional anguish.

54. Traveling is a time of great vulnerability for a disabled person who must rely on assistance and accommodation of others.

55. Defendants' conduct toward Plaintiff was extreme and outrageous, which intentionally or recklessly caused severe emotional distress and bodily harm to Plaintiff.

56. When Plaintiff sought help from Defendants' agents, she was met with abuse, rudeness and hostility. She was shooed away from wheelchairs, yelled at, threatened, abandoned and refused assistance by Defendants and their agents.

57. Throughout her travel ordeal with Defendants, Plaintiff was pressed beyond her physical and emotional limits by Defendants.

58. Traveling in and of itself can be stressful, but for Plaintiff, this trip became an outrage because of Defendants intimidating, offensive and outrageous actions, resulting in Plaintiff's severe emotional distress.

59. Defendants' actions and that of their agents was intentional and/or reckless and their actions were outrageous, extreme, beyond all bounds of decency and intolerable.

60. Plaintiff requests compensation for the emotional pain and suffering she has endured, as well as all other compensation the court and jury deem just and proper.

## SIXTH CAUSE OF ACTION
*NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS*

61. Plaintiff re-alleges and incorporates by reference as though fully set forth herein, all other paragraphs of this Complaint.

62. During her travel with Defendants, the Defendants' agents repeatedly failed to take the necessary precautions to ensure Plaintiff was protected from harm and provide the standard of care of which they owed a duty to Plaintiff.

63. Even though Plaintiff's ticket indicated that she had requested wheelchair assistance, none of the Defendants' agents provided the needed wheelchair, and other assistance. Plaintiff had only herself to rely upon as a result of the maltreatment from the Air France employees. Defendants' actions were not reasonable under the circumstances to ensure that Plaintiff, a disabled passenger would be shielded from acute emotional distress.

64. Defendants knew or should have known their conduct would inflict emotional distress and their actions were of such a nature as to be outrageous and intolerable and offended the generally accepted standards of decency. Defendants' behavior was intolerable.

65. Each one of the Defendants' agents who abandoned Plaintiff were grossly negligent, failed to properly respond to Plaintiff's physical condition and care for Plaintiff as required by law and common decency.

66. Plaintiff requests compensation for the emotional pain and suffering she has endured, as well as all other compensation the court and jury deem just and proper.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests:

1. Compensatory damages according to proof and prejudgment interest thereon to the extent allowable by law;

2.  Exemplary and punitive damages according to proof and as allowed by law;

3.  Costs of suit, expenses and attorney fees as allowed by law;

4.  For such other and further relief as court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues and causes of this action.

Respectfully submitted,

**MOTLEY RICE LLC**

By:    _s/ *Kevin R. Dean*_____ _____
Kevin R. Dean (GA Fed Bar No. 214855)
James R. Brauchle *(PHV to be submitted)*
(SC Fed Bar No. 8014)
28 Bridgeside Blvd.
Mount Pleasant, SC 29464
Tel. (843) 216-9000
Fax (843) 216-9540
kdean@motleyrice.com
jbrauchle@motleyrice.com

*COUNSEL FOR PLAINTIFFS*

Dated: January 14, 2025